# 12-1094-bk(L)

## 12-1150-bk(CON), 12-1205-bk(CON)

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

IN RE: JOHNS-MANVILLE CORPORATION

COMMON LAW SETTLEMENT COUNSEL, STATUTORY AND HAWAII DIRECT
ACTION SETTLEMENT COUNSEL, ASBESTOS PERSONAL INJURY PLAINTIFFS,

*Appellants,*

—against—

THE TRAVELERS INDEMNITY COMPANY, TRAVELERS CASUALTY AND SURETY
COMPANY, FKA AETNA CASUALTY AND SURETY COMPANY,

*Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## PETITION FOR REHEARING AND REHEARING *EN BANC*

BARRY R. OSTRAGER
ANDREW T. FRANKEL
JONATHAN M. WEISS
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
(212) 455-2000

*Attorneys for Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *counsel for The Travelers Indemnity Company and Travelers Casualty and Surety Company* certifies as follows:

1.    The Travelers Indemnity Company is a wholly owned subsidiary of Travelers Insurance Group Holdings, Inc., which is a wholly owned subsidiary of Travelers Property Casualty Corp., which is a wholly owned subsidiary of The Travelers Companies, Inc., a publicly traded company.

2.    No publicly held corporation other than The Travelers Companies, Inc. owns 10% or more of the stock of The Travelers Indemnity Company.

3.    Travelers Casualty and Surety Company is a wholly owned subsidiary of Travelers Insurance Group Holdings, Inc., which is a wholly owned subsidiary of Travelers Property Casualty Corp., which is a wholly owned subsidiary of The Travelers Companies, Inc., a publicly traded company.

4.    No publicly held corporation other than The Travelers Companies, Inc. owns 10% or more of the stock of Travelers Casualty and Surety Company.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT .........................................................i

PRELIMINARY STATEMENT AND RULE 35 STATEMENT ...........................1

BACKGROUND ..........................................................................................7

ARGUMENT ...............................................................................................8

I.   THE PANEL'S DECISION CONTRAVENES ESTABLISHED
     NEW YORK LAW AND THE PLAIN TERMS OF THE
     CONTRACTS...................................................................................8

II.  THE PANEL'S DECISION WILL INJECT SUBSTANTIAL
     UNCERTAINTY AND ENCOURAGE LITIGATION ................................15

CONCLUSION ..........................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Argo Corp. v. Greater N.Y. Mut. Ins. Co.*, 4 N.Y.3d 332 (2005) ..............................9

*Bugg v. Am. Standard, Inc.*, 2005 WL 1245043 (Ohio App. Ct. May 26, 2005) ..................................................................................................11

*Fort M Dev. Corp. v. Inland Credit Corp.*, 388 N.Y.S.2d 603 (1st Dep't 1976), *aff'd*, 43 N.Y.2d 763 (1977) .................................................. 6, 12

*Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562 (2002) .......................................9

*IDT Corp. v. Tyco Grp., S.A.R.L.*, 13 N.Y.3d 209 (2009) ............................. 6, 9, 12

*In re Johns-Manville Corp. (Manville I)*, 2004 WL 1876046 (Bankr. S.D.N.Y. Aug. 17, 2004), *aff'd in relevant part*, 340 B.R. 49 (S.D.N.Y. 2006), *rev'd*, 517 F.3d 52 (2d Cir. 2008), *rev'd sub nom. Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009) .......................................................................7

*In re Johns-Manville Corp.* (*Manville II*), 340 B.R. 49 (S.D.N.Y. 2006), *rev'd*, 517 F.3d 52 (2d Cir. 2008), *rev'd sub nom. Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009) ...................................................... 7, 12

*In re Johns-Manville Corp.* (*Manville III*), 517 F.3d 52 (2d Cir. 2008), *rev'd sub nom. Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009) ...........................7

*In re Johns-Manville Corp.* (*Manville IV*), 600 F.3d 135 (2d Cir. 2010) .............3, 8

*In re Johns-Manville Corp.* (*Manville V*), 440 B.R. 604 (Bankr. S.D.N.Y. 2010), *rev'd*, 845 F. Supp. 2d 584 (S.D.N.Y. 2012), *rev'd*, No. 12-1094-bk (2d Cir. July 22, 2014) ............................................................ 8, 13, 14

*In re Johns-Manville Corp.* (*Manville VI*), 845 F. Supp. 2d 584 (S.D.N.Y. 2012), *rev'd*, No. 12-1094-bk (2d Cir. July 22, 2014) ......................................2, 8

*In re W.R. Grace & Co.*, 115 F. App'x 565 (3d Cir. 2004) ....................................11

*Kel Kim Corp. v. Cent. Mkts.*, 70 N.Y.2d 900 (1987) ................................. 6, 11, 12

*Kolodin v. Valenti*, 979 N.Y.S.2d 587 (1st Dep't 2014) .........................................12

*MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640 (2009) .................. 9, 12

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685 (1995) ........................................................................................................9

*Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009) ............................................3, 8

*Walnut Place LLC v. Countrywide Home Loans, Inc.*, 948 N.Y.S.2d 580 (1st Dep't 2012) ................................................................................................ 6, 11

**Federal Rules**

Federal Rule of Appellate Procedure 35 .......................................... 1, 6, 15

Federal Rule of Appellate Procedure 40 .......................................... 1, 6, 15

**Other Authorities**

Restatement (Second) Contracts § 203 ...................................................5

Restatement (Second) Contracts § 76 .....................................................5

## PRELIMINARY STATEMENT AND RULE 35 STATEMENT[1]

On July 22, 2014, a Panel of this Court vacated the decision of Judge John G. Koeltl and held that Travelers must make payment of over $573 million pursuant to three heavily negotiated settlement contracts (the "Settlement Agreements") despite the failure of express conditions precedent. In doing so, the Panel fundamentally re-wrote the plain and unambiguous text of the parties' agreements and disregarded bedrock governing New York contract law, including the long-recognized rule that an express condition precedent in a settlement agreement must be strictly and literally applied according to its terms. The Panel has injected substantial uncertainty into the law, undermined the ability of parties to settle, and ordered Appellees to pay over a half a billion dollars in a closely watched case on the basis of patently flawed reasoning.

The condition precedent at issue here concerns the scope and finality of the Bankruptcy Court's 2004 order (the "Clarifying Order") clarifying its 1986 channeling injunctions in the seminal *Johns-Manville* bankruptcy (the "1986 Orders"). The dispute giving rise to the Settlement Agreements was whether

---

[1] Appellees request rehearing *en banc*, pursuant to Federal Rule of Appellate Procedure 35, or alternatively, Panel rehearing, pursuant to Federal Rule of Appellate Procedure 40. A copy of the Panel decision ("Slip op.") is appended hereto.

certain asbestos-related Direct Action[2] suits brought by Appellants, and any related contribution or indemnity claims, including those asserted by Chubb Insurance Company ("Chubb"), were barred by the Bankruptcy Court's 1986 Orders. The parties resolved that dispute under Settlement Agreements that provided in plain and unambiguous terms that Travelers would have no payment obligations whatsoever unless and until Travelers obtained a "Final Order" clarifying that all claims against Travelers "arising from or relating to" Travelers' handling of asbestos claims, including "*any claims for contribution or indemnity relating in any way*" to the same, are "permanently enjoined." *In re Johns-Manville Corp.* (*Manville VI*), 845 F. Supp. 2d 584, 588 (S.D.N.Y. 2012) (emphasis added). In equally plain and unambiguous language, the parties specifically defined the term "Final Order" as an order "*affirmed* by the highest court to which such order was appealed or certiorari has been denied and the time to take any further appeal or petition for certiorari shall have expired." *Id.* (emphasis added). The settling parties each explicitly agreed that "the non-occurrence or failure to satisfy any of the conditions precedent . . . *shall relieve Travelers from any obligation whatsoever under [each of the] Settlement Agreement[s].*" *Id.* (emphasis added).

---

[2]     The "Direct Actions" sought to hold Travelers liable under various novel theories, including that Travelers purportedly failed to disclose to third parties what it knew about asbestos hazards as a result of its insurance relationship with Johns-Manville.

Although the Bankruptcy Court entered an order that would have met this condition had it been upheld on appeal, this Court reversed. Travelers successfully petitioned the United States Supreme Court for a writ of *certiorari* and the Supreme Court reversed and remanded this Court's decision. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 156 (2009). On remand, this Court considered issues that were not decided by the Supreme Court, including challenges Chubb preserved on direct appeal as to whether the Clarifying Order could permissibly bar Chubb's contribution claims. *In re Johns-Manville Corp.* (*Manville IV*), 600 F.3d 135, 148–58 (2d Cir. 2010). This Court again explicitly "***reversed* as to Chubb**," and held that the Clarifying Order could *not* bar Chubb from asserting contribution or indemnity claims against Travelers. *Id.* at 158–59 (emphasis added). Thus, the Clarifying Order that survived on *direct appeal* indisputably did not bar all "claims for contribution or indemnity," as required under the terms of the parties' express condition precedent. Moreover, because the Clarifying Order was explicitly "reversed as to Chubb," it never became a "Final Order." The District Court, in a 32-page decision the Panel here reversed, recognized that the conditions precedent had not been satisfied under the clear and unambiguous terms of the Settlement Agreements.

The Panel's decision is predicated on the erroneous conclusion that this Court's reversal on *direct* appeal of the Clarifying Order constituted a mere

"collateral" challenge that could be disregarded for purposes of the Final Order

condition, and that Travelers' interpretation

> would have required the bankruptcy court either to: (i) certify that all
> potential claimants—all entities and individuals on the planet, from now
> until the end of time—have received constitutionally sufficient notice of the
> 1986 Orders and their relevant proceedings; or (ii) bar all claimants whether
> or not they had constitutionally sufficient notice.

Slip. op. at 18.  The panel reasoned that this might have reflected Travelers'

"private hopes and dreams," but it was not what sophisticated parties *likely*

intended.  *Id.*

The Settlement Agreements, however, plainly did not require the

Bankruptcy Court to certify that "all entities and individuals on the planet, from

now until the end of time—have received constitutionally sufficient notice," nor

did it require the Court to "bar all claimants whether or not they had

constitutionally sufficient notice."  *Id.*  Rather, the Agreements required a final

order had to be entered on direct appeal providing protections against Direct

Actions and contribution claims.  The Settlement Agreements did not speak to the

consequences of subsequent collateral attacks.

The Panel relied on the doctrine of impossibility to read the parties'

negotiated condition precedent out of existence, reasoning that "Travelers'

interpretation amounts to a contractual term that is incapable of ever being

fulfilled, because some claimant somewhere on the planet could always appear to

attack the order collaterally." *Id.* at 19 (citing Restatement (Second) Contracts §§ 76, 203). This reasoning is manifestly flawed, as the Settlement Agreements did not speak to collateral attacks that might post-date the entry of a final order.

The Panel's reliance on the doctrine of impossibility to disregard compliance with the condition precedent was therefore patently incorrect. First, satisfying the condition was surely not "impossible." While none of the parties to the Settlement Agreements could have known whether the Clarifying Order would be approved, or whether there would be objections to the Clarifying Order, or whether those objections (if asserted) would ultimately prove successful, it was certainly possible that Travelers could have obtained a Final Order containing the protections set forth in the Clarifying Order. Had Chubb not continued to press its objections, or if this Court had affirmed Judge Koeltl's ruling affirming the Clarifying Order, the condition would have been satisfied. ***Thereafter***, Travelers assumed the risk of subsequent collateral attacks "until the end of time." It was precisely because of the uncertainty as to whether the Clarifying Order would be entered and upheld on direct appeal that the parties in clear, unambiguous, and explicit terms agreed that Travelers would be "relieve[d] . . . from any obligation whatsoever" if the Clarifying Order was not *affirmed* by way of a "Final Order."

Moreover, under established New York law, the impossibility doctrine only applies in the limited situations, *not applicable here*, where the impossibility

5

is unforeseeable or was caused by the party insisting that the condition be satisfied.[3]  And failure of a condition precedent—even one that is impossible to satisfy—*extinguishes* a party's obligation to perform under a contract.[4]  The Panel here relied on the impossibility doctrine to excuse the condition for the purpose of requiring Travelers to perform—the opposite of what New York law requires.

The Panel's decision is based on the erroneous application of governing New York law that should be corrected by the Panel, or, alternatively, addressed by the full Court as this case presents questions of "exceptional importance."  Fed. R. App. R. 35(a)(2), 40.  New York's requirement that conditions precedent be strictly and literally performed is based on the state's public policy that parties are free to contract as they wish, and the recognition that "strict enforcement [of settlement agreements] not only serves the interest of efficient dispute resolution but is also essential to the management of court calendars and integrity of the litigation process."  *IDT Corp. v. Tyco Grp., S.A.R.L.*, 13 N.Y.3d 209, 213–14 (2009) (internal quotations omitted).  These goals are ultimately undermined when courts do not enforce established contract law and the express terms agreed to by the parties, who were here represented by sophisticated

---

[3]  *See Kel Kim Corp. v. Cent. Mkts.*, 70 N.Y.2d 900, 902 (1987); *Walnut Place LLC v. Countrywide Home Loans, Inc.*, 948 N.Y.S.2d 580, 581 (1st Dep't 2012).

[4]  *See Fort M Dev. Corp. v. Inland Credit Corp.*, 388 N.Y.S.2d 603, 604 (1st Dep't 1976), *aff'd*, 43 N.Y.2d 763 (1977).

counsel on all sides. The Court has an institutional interest in ensuring that settlement agreements are enforced according to their terms and construed in accord with clearly established, governing contract law. The Court should not allow a judgment in excess of half a billion dollars to rest on such manifestly incorrect reasoning.

## BACKGROUND

Pursuant to the Settlement Agreements, Travelers agreed to pay substantial sums to resolve the Direct Action suits. However, the parties explicitly conditioned Travelers' payment obligation on obtaining a "Final Order" enjoining the Direct Actions initiated by Appellants and any related claims for contribution and indemnity.

In 2004, the Bankruptcy Court approved the Settlement Agreements and issued a Clarifying Order holding the 1986 Orders barred the Direct Actions and related contribution claims. *In re Johns-Manville Corp. (Manville I)*, 2004 WL 1876046, at *32–34 (Bankr. S.D.N.Y. Aug. 17, 2004). The District Court affirmed in relevant part, *In re Johns-Manville Corp.* (*Manville II*), 340 B.R. 49, 72–73 (S.D.N.Y. 2006), but in 2008 this Court reversed, holding that while the 1986 Orders barred the Direct Actions, the Bankruptcy Court lacked jurisdiction to enter the 1986 Orders in the first instance, *In re Johns-Manville Corp.* (*Manville III*), 517 F.3d 52, 66–67 (2d Cir. 2008). The Supreme Court reversed, holding that

7

the 1986 Orders "unambiguously apply" to Direct Actions, and that there was no basis to "prune" the Orders to reach a contrary result. *Bailey*, 557 U.S. at 150, 154. On remand, this Court again reversed the District Court, holding that that the District Court "erred in rejecting Chubb's due process argument," and accordingly "reversed as to Chubb." *Manville IV*, 600 F.3d at 148–49, 159. Following that decision, Travelers moved for rehearing *en banc*, and filed petitions to the Supreme Court in order to seek a "Final Order" affirming the Bankruptcy Court's 2004 Clarifying Order. Appellants—over a year later—moved to "enforce" the Settlement Agreements, arguing that the Supreme Court's decision in *Bailey* remanding for further proceedings somehow rendered the Clarifying Order a "Final Order." The Bankruptcy Court granted the motions, *In re Johns-Manville Corp.* (*Manville V*), 440 B.R. 604, 615 (Bankr. S.D.N.Y. 2010), but Judge Koeltl reversed, holding that the failure of the condition precedent excused Travelers' performance under the Settlement Agreements. *Manville VI*, 845 F. Supp. 2d at 592–96. On July 22, 2014, the Panel reversed.

## ARGUMENT

### I.   THE PANEL'S DECISION CONTRAVENES ESTABLISHED NEW YORK LAW AND THE PLAIN TERMS OF THE CONTRACTS

The Panel misapplied basic principles of New York contract law, which govern the Settlement Agreements at issue. Under New York law, "a written agreement that is complete, clear and unambiguous on its face must be

enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002). Where the contract contains a condition precedent, "failure to comply with [the] condition precedent . . . vitiates the contract." *Argo Corp. v. Greater N.Y. Mut. Ins. Co.*, 4 N.Y.3d 332, 339 (2005). "Express conditions [precedent] must be literally performed; substantial performance will not suffice." *MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 645 (2009).[5] New York's strict construction of conditions precedent is based on the policies of freedom of contract and encouraging settlement. *IDT Corp.*, 13 N.Y.3d at 213–14.

The Settlement Agreements unambiguously conditioned Travelers' payment obligation upon securing a Final Order enjoining asbestos-related contribution and indemnity claims against Travelers. This Court's reversal of the Clarifying Order on direct appeal freed Chubb to bring such contribution claims against Travelers. The condition precedent, therefore, failed.

The Panel attacks a straw man by reasoning that Travelers' interpretation cannot be what the parties reasonably intended because it would have required the Bankruptcy Court to either "certify that all potential claimants . . . have received constitutionally sufficient notice of the 1986 Orders" or "bar all

---

[5]     *Accord IDT Corp.*, 13 N.Y.3d at 214; *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 692 (1995).

claimants whether or not they had constitutionally sufficient notice." Slip op. at 18. The Panel's reasoning, however, rests on a false premise. The "Final Order" condition in no way purported to address potential legal proceedings that occurred after entry of the Final Order. Rather, it required as a condition to any obligation to make payment that the Clarifying Order, as drafted, provide the agreed protections, including as to any and all contribution claims, in an order affirmed on direct appeal. This Court's reversal of the Clarifying Order in *Manville IV*, which exposed Travelers to contribution claims, resulted in the failure of that condition on direct appeal.

The Panel's reliance on the doctrine of impossibility to conclude that the condition precedent should not be read according to its plain terms, Slip. op. at 18–19, was wrong for multiple reasons. Most fundamentally, satisfying the condition precedent was not impossible. Contrary to the Panel's reasoning, the Settlement Agreement did not address the issue of collateral attacks that might occur after the entry of a Final Order. Consequently, it is simply wrong to attribute to Travelers a "private hope[]"that the Settlement Agreements would preclude collateral attacks by "some claimant somewhere on the planet." *Id.* at 18–19. Travelers' expectations were clearly and unambiguously memorialized in the Settlement Agreements, which required that Travelers' payment obligation would arise only if the conditions precedent were met, including entry of a Clarifying

10

Order barring claims for contribution or indemnity that was upheld on *direct appeal*.[6]  At the time the parties executed the Settlement Agreements, it was certainly possible that this condition could have been met.  Indeed, both the Bankruptcy Court and the District Court entered such an order and rejected Chubb's and other parties' challenges.  It was likewise possible that the Clarifying Order would either go unchallenged or be upheld on direct appeal.  While all of this was possible, however, it was by no means certain, which is precisely why the parties agreed to the condition precedent.  In short, the condition precedent was not impossible to satisfy.  It simply failed.[7]

---

[6]  Contribution claims posed an obvious threat to the finality for which Travelers bargained by exposing Travelers to indirect liability for the very asbestos-related claims that the Clarifying Order also barred.  This concern was not theoretical, as numerous other insurers had been named in Direct Actions and could likewise be named in such suits in the future.  *See, e.g., In re W.R. Grace & Co.*, 115 F. App'x 565, 567 (3d Cir. 2004); *Bugg v. Am. Standard, Inc.*, 2005 WL 1245043, at *1 (Ohio App. Ct. May 26, 2005).

[7]  The doctrine of impossibility does not apply for additional reasons.  The doctrine applies where the impossibility was "produced by an unanticipated event that could not have been foreseen or guarded against in the contract."  *Kel Kim*, 70 N.Y.2d at 902.  It was foreseeable that the Settlement Agreements, which limited the rights of third parties to seek contribution or indemnity claims against Travelers that were unlike those that had been asserted at the time of the 1986 Orders, could be successfully challenged in court.  Indeed, Travelers explicitly guarded against just that possibility by making a "Final Order" a condition precedent to its payment obligation.  New York courts have also excused performance of a condition where the inability to perform the condition was caused by the party relying on the condition.  *See Walnut Place*, 948 N.Y.S.2d at 581 ("The prevention/impossibility doctrine . . . only applies, where, unlike here, nonperformance of a condition precedent was caused by the party insisting that the condition be satisfied.").  This exception is inapplicable because Travelers was not the cause of any inability to perform the condition.  To the contrary, Travelers did everything in its power to ensure that the condition was satisfied, including by seeking rehearing of this Court's decision on remand and by petitioning for *certiorari* and mandamus to the United States Supreme Court.

Further, the doctrine of impossibility, even when it applies, excuses a party from performing under a contract. *See, e.g.*, *Kel Kim*, 70 N.Y.2d at 902; *Kolodin v. Valenti*, 979 N.Y.S.2d 587, 589 (1st Dep't 2014). Likewise, the non-occurrence of a condition precedent *discharges* performance. *See, e.g.*, *MHR Capital Partners LP*, 12 N.Y.3d at 645; *IDT Corp.*, 13 N.Y.3d at 214. Here, in contrast, the Panel effectively excused the non-occurrence of a condition to *require* performance, the opposite of what New York law requires. *Cf. Fort M,* 388 N.Y.S.2d at 604 ("[P]erformance by [the defendant] is excused due to the impossibility of performance of a condition precedent by [the plaintiff].").

The Panel also wrongly characterized Chubb's successful appeal as a mere "collateral attack." Chubb prosecuted a direct appeal from the Clarifying Order. While Travelers assumed the risk of a true collateral attack by some unknown claimant in the future (in the Panel's parlance, "until the end of time"), Travelers sought to minimize that risk by attempting to notify all parties affected by the Clarifying Order with one of the most extensive notice campaigns in history—a campaign that included publication in more than 500 newspapers nationwide with a combined readership of over 100 million people, and which succeeded in notifying Chubb. The prospect of obtaining a Final Order after such an extensive notice campaign "provided a level of additional certainty and repose for which Travelers was prepared to pay." *Manville II*, 340 B.R. at 67. And the

12

Settlement Agreements spelled out in explicit detail that there could be no such "Final Order" until the appellate proceedings on direct appeal had run their full course, resulting in an affirmance of the Clarifying Order. *See Manville V*, 440 B.R. at 608 n.7.

Thus, the Clarifying Order did not, as the Panel incorrectly reasoned, become a "Final Order" when the Supreme Court in *Bailey* reversed and remanded for this Court to consider the still-unresolved objections to the Clarifying Order that Chubb raised on direct appeal.[8]  The Panel reasoned that "[t]he Supreme Court's remand with respect to Chubb's due process argument had no bearing on the Clarifying Order's finality," and that "while *Manville IV* reversed as to Chubb, it did not alter any aspect of the Clarifying Order."  Slip op. at 23–24.  This simply ignores the plain terms of the Settlement Agreements, which required "[e]ntry of . . . a Clarifying Order *containing prohibitions against Claims at least as broad as those contained in Exhibit A* [*i.e.*, the proposed clarifying order barring "any claims for contribution or indemnity relating in any way" to Travelers' handling of asbestos claims], which order[] *shall have become a Final Order*."  *Manville V*, 440 B.R. at 612 (emphasis added).  Although *Manville IV* did not alter the text of the Clarifying Order, it did alter the scope of its prohibitions by opening Travelers

---

[8]     The Panel also incorrectly found that Travelers should be responsible for more than $70 million in prejudgment interest, accruing from the date *Bailey* issued, at New York's 9% rate.  That issue had not even been addressed by the District Court below.

13

to potential liability for Chubb's contribution claims.[9]  The Agreements could have required payment regardless of the outcome of appellate review, or provided that Travelers' payment obligations were conditioned on an order "affirmed in part and reversed in part."  But these were not the agreements the parties entered into.

   The Panel also reasoned that the "the parties bargained only for a clarification, not an expansion, of the 1986 Orders," and that the Settlement Agreements "evidence no intent by the parties that the Clarifying Order would" extend the scope of the 1986 Orders.  Slip. op. at 18–19.  That merely begs the question.  The issue addressed in the Settlement Agreements was whether the 1986 Orders barred the Direct Actions and related contribution and indemnity claims— not by virtue of Travelers' "subjective hopes," but as spelled out in detail in the Settlement Agreements and accompanying Clarifying Order.  Thus, it is the Panel's interpretation of the condition, not Travelers', that "common canons of contract construction call upon [this Court] to reject."  *Id*. at 19.

---

[9] Moreover, the Clarifying Order could not possibly have been considered a "Final Order" at the time of the Supreme Court's ruling in *Bailey* given the Court's remand and ongoing appellate proceedings leading to *Manville IV*.  The Settlement Agreements defined a "Final Order" as "an order as to which the time to appeal, petition for certiorari, motion for reargument or rehearing has expired ***and as to which no appeal***, petition for certiorari or other proceeding for reargument or rehearing ***shall be pending*** . . . , such order shall have been ***affirmed*** by the highest court to which such order was appealed or certiorari has been denied and the time to take any further appeal or petition for certiorari shall have expired."  *Manville V*, 440 B.R. at 608 n.7.

14

## II.    THE PANEL'S DECISION WILL INJECT SUBSTANTIAL UNCERTAINTY AND ENCOURAGE LITIGATION

Conditioning payment on the occurrence of a future event, such as securing a court-approved bar order, receiving a specified number of opt-outs in a class action, or obtaining the entry of a final order containing particular language, is routine in the settlement of many types of cases. The purpose of such conditions, as here, is to ensure that the defendant is not required to pay unless it receives the protections for which the parties bargained. Black-letter New York contract law safeguards this salutary purpose by requiring strict compliance with conditions precedent. Reconsideration, whether by the Panel or the full Court, is necessary because the Panel's decision will ultimately discourage settlement and is contrary to the long-standing public policy of New York state courts. Further, this case arises from one of the most significant bankruptcies in U.S. history and litigation that has garnered the attention of parties and courts throughout the country, including the Supreme Court. To predicate a judgment in excess of half a billion dollars upon such manifestly incorrect reasoning would undermine confidence in the federal judiciary. These are issues of exceptional importance justifying full consideration by this Court, Fed. R. App. P. 35(a)(2), or Panel rehearing to rectify the Panel's misapplication of governing law. *Id.* R. 40.

### CONCLUSION

For all of the foregoing reasons, the Petition should be granted.

Dated:   New York, New York
         August 5, 2014


                              Respectfully submitted,

                              SIMPSON THACHER & BARTLETT


                              By:  /s/ Barry R. Ostrager
                              Barry R. Ostrager
                              Andrew T. Frankel
                              Jonathan M. Weiss
                              425 Lexington Avenue
                              New York, New York 10017-3954
                              Tel.: (212) 455-2000
                              Fax: (212) 455-2502

                              *Attorneys for The Travelers Indemnity
                              Company and Travelers Casualty and Surety
                              Company*

**ADDENDUM**

**12-1094-bk(L)**
**In Re: JOHNS-MANVILLE CORPORATION Common Law Settlement Counsel, et al.**
**v. The Travelers Indemnity Co., et al.**

1              UNITED STATES COURT OF APPEALS

2                   FOR THE SECOND CIRCUIT

3                      August Term, 2012

4     (Argued: January 10, 2013          Decided: July 22, 2014)

5        Docket Nos. 12-1094-bk(L), 12-1150-bk(Con), 12-1205-bk(Con)

6     - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
7     IN RE: JOHNS-MANVILLE CORPORATION, MANVILLE CORPORATION, MANVILLE
8     INTERNATIONAL CORPORATION, MANVILLE EXPORT CORPORATION,
9     JOHNS-MANVILLE INTERNATIONAL CORPORATION, MANVILLE SALES
10    CORPORATION, f/k/a JOHNS-MANVILLE SALES CORPORATION, successor by
11    merger to MANVILLE BUILDINGS MATERIALS CORPORATION, MANVILLE
12    PRODUCTS CORPORATION and MANVILLE SERVICE CORPORATION, MANVILLE
13    INTERNATIONAL CANADA, INC., MANVILLE CANADA, INC., MANVILLE
14    INVESTMENT CORPORATION, MANVILLE PROPERTIES CORPORATION,
15    ALLAN-DEANE CORPORATION, KEN-CARYL RANCH CORPORATION,
16    JOHNS-MANVILLE IDAHO, INC., MANVILLE CANADA SERVICE INC., SUNBELT
17    CONTRACTORS, INC.,
18
19                   Debtors.
20    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
21    COMMON LAW SETTLEMENT COUNSEL, STATUTORY AND HAWAII DIRECT ACTION
22    SETTLEMENT COUNSEL,
23
24                   Movants-Appellants,
25
26    ASBESTOS PERSONAL INJURY PLAINTIFFS,
27
28                   Interested Parties-Appellants,
29
30                        v.
31
32    THE TRAVELERS INDEMNITY COMPANY, TRAVELERS CASUALTY AND SURETY
33    COMPANY, f/k/a AETNA CASUALTY AND SURETY COMPANY,
34
35                   Objectors-Appellees.*
36    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
37    _____
38          *The Clerk of the Court is instructed to conform the caption in
39    accordance herewith.
40
41

1   B e f o r e:   WINTER, POOLER, and CHIN, <u>Circuit Judges</u>.
2
3       Appeal from a judgment of the United States District Court

4   for the Southern District of New York (John G. Koeltl, <u>Judge</u>),

5   reversing the bankruptcy court's final judgment (Burton R.

6   Lifland, <u>Judge</u>) that had enforced settlement agreements and

7   compelled appellees to make payments to asbestos plaintiffs under

8   the agreements.  We vacate the district court's order and order

9   reinstatement of the final judgment of the bankruptcy court.

10                          PAUL D. CLEMENT (Matthew Gluck & Kent A.
11                          Bronson, Milberg LLP, New York, NY, <u>on</u>
12                          <u>the brief</u>), Bancroft PLLC, Washington,
13                          D.C., <u>for</u> <u>Movant-Appellant</u> <u>Statutory and</u>
14                          <u>Hawaii Direct Action Settlement Counsel</u>.
15
16                          RONALD BARLIANT (Kenneth S. Ulrich &
17                          Danielle Wildern Juhle, <u>on the brief</u>),
18                          Goldberg Kohn Ltd., Chicago, IL, <u>for</u>
19                          Movant-Appellant <u>Common Law Settlement</u>
20                          <u>Counsel</u>.
21
22                          SANDER L. ESSERMAN (Cliff I. Taylor, <u>on</u>
23                          <u>the brief</u>), Stutzman, Bromberg, Esserman
24                          & Plifka, P.C., Dallas, TX, <u>for</u>
25                          <u>Interested Parties-Appellants</u> <u>Asbestos</u>
26                          <u>Personal Injury Plaintiffs</u>.
27
28                          BARRY R. OSTRAGER (Andrew T. Frankel,
29                          Jonathan M. Weiss & Bryce A. Pashler, <u>on</u>
30                          <u>the brief</u>), Simpson Thacher & Bartlett
31                          LLP, New York, NY, <u>for</u> <u>Objectors-</u>
32                          <u>Appellees</u> <u>The Travelers Indemnity</u>
33                          <u>Company & Travelers Casualty and Surety</u>
34                          <u>Company</u>.
35
36   WINTER, <u>Circuit Judge</u>:
37
38       Common Law Settlement Counsel, Statutory and Hawaii Direct

39   Action Settlement Counsel, and Asbestos Personal Injury

1    Plaintiffs[1] appeal from Judge Koeltl's reversal of a bankruptcy
2    court's final judgment.  Bankruptcy Judge Lifland had required
3    appellees -- The Travelers Indemnity Company and Travelers
4    Casualty and Surety Company (together, "Travelers") -- to pay
5    over $500 million to asbestos plaintiffs based on Travelers'
6    obligations under certain settlement agreements (the
7    "Agreements").  The district court reversed, holding that
8    conditions precedent to payment under the Agreements were never
9    met, and that Travelers' obligation to pay therefore never
10   matured.

11        Because we conclude that the relevant conditions precedent
12   were satisfied, we vacate the district court's order and remand
13   with instructions to reinstate the bankruptcy court's final
14   judgment.  In addition, given that Travelers did not timely raise
15   its arguments regarding the Agreements' conditions that the
16   movants either execute a specific number of releases and deliver
17   them into escrow or dismiss their claims with prejudice, we deem
18   those arguments waived.  Finally, we hold that the bankruptcy
19   court correctly applied prejudgment interest to the amount owed
20   and that it correctly calculated the total payment due from the
21   appropriate date.

22

23

---

[1] The nature of the various appellants will become clear, to the extent
relevant, in the course of this opinion.  The Asbestos Personal Injury
Plaintiffs are six asbestos personal injury claimants who stand to recover
from the Common Law Settlement Trust.

3

1                              BACKGROUND

2        For many years, Travelers was the primary insurer for the

3   Johns-Manville Corporation ("Manville"), once the largest

4   supplier of asbestos and asbestos-containing products.  In re

5   Johns-Manville Corp. (Manville I), Nos. 82 B 11656, 82 B 11657,

6   82 B 11660, 82 B 11661, 82 B 11665, 82 B 11673, 82 B 11675, 82 B

7   11676(BRL), 2004 WL 1876046, at *2-3 ¶¶ 1, 3, *5 ¶ 12 (Bankr.

8   S.D.N.Y. Aug. 17, 2004).  In 1982, after asbestos-related health

9   problems triggered litigation, Manville, faced with the prospect

10  of tremendous liability, filed a Chapter 11 petition for

11  bankruptcy protection and reorganization.  In re Johns-Manville

12  Corp. (Manville II), 340 B.R. 49, 54 (S.D.N.Y. 2006); Travelers

13  Indem. Co. v. Bailey, 557 U.S. 137, 140 (2009).

14       With Manville entangled in bankruptcy proceedings, asbestos

15  plaintiffs began to file direct-action[2] suits against Travelers

16  and other insurers based on the insurers' relationships with

17  Manville.  Manville II, 340 B.R. at 55.  At the same time,

18  Travelers and other insurers were involved in a policy-coverage

19  dispute with Manville, and numerous contribution, indemnity, and

20  cross claims were asserted among Manville's insurers.  Id.;

21  Manville I, 2004 WL 1876046, at *14-15 ¶¶ 54, 57.

22       Consequently, Travelers and the other insurers entered into

23  a settlement agreement with Manville.  Pursuant to the

---

[2] A "direct action" is "[a] lawsuit by a person claiming against an
insured but suing the insurer directly instead of pursuing compensation
indirectly through the insured."  Black's Law Dictionary 525 (9th ed. 2009).

4

1  settlement, Travelers agreed to contribute roughly $80 million to

2  a trust established as part of the bankruptcy estate (the

3  "Manville Trust") in exchange for a complete release of Manville

4  policy-related liabilities. Manville I, 2004 WL 1876046, at *15

5  ¶¶ 58, 61. The bankruptcy court provided extensive notice

6  regarding the settlement, and it also appointed a Future Claims

7  Representative ("FCR") to represent future asbestos claimants

8  during relevant proceedings. In re Johns-Manville Corp.

9  (Manville IV), 600 F.3d 135, 140-41 (2d Cir. 2010).

10      The bankruptcy court eventually approved the settlement and

11  entered two orders, the Insurance Settlement Order and the

12  Confirmation Order (together, the "1986 Orders"). Manville I,

13  2004 WL 1876046, at *15-16 ¶¶ 60-61, 64. The 1986 Orders were

14  "meant to provide the broadest protection possible to facilitate

15  global finality for Travelers as a necessary condition for it to

16  make a significant contribution to the Manville estate." Id. at

17  *31 ¶ 23. The Insurance Settlement Order released Travelers and

18  the other settling insurers from Manville-related obligations,

19  enjoined "all future claims for bad faith or insurer misconduct,"

20  and channeled all such claims to the Manville Trust. Id. at *15

21  ¶ 61. The Confirmation Order confirmed Manville's reorganization

22  plan, incorporating the Insurance Settlement Order by reference

23  and enjoining "all persons from commencing any action against any

24  of the Settling Insurance Companies for the purpose of, *directly*

25  *or indirectly*, collecting, recovering or receiving payment of, on

5

1    or with respect to any Claim . . . or Other Asbestos

2    Obligation . . . .”  Id. at *16 ¶ 64 (internal citation and

3    quotation marks omitted).

4         Despite the 1986 Orders, asbestos plaintiffs filed more

5    actions against Travelers in several states.  Id. at *17 ¶ 70.

6    The majority of these claims did not allege violations derivative

7    of Manville’s actions; instead, they were based on Travelers’ own

8    alleged wrongdoing as Manville’s insurer.  Although it is a

9    misnomer, see infra note 3, we will style these claims as the

10   “Direct Actions.”  The Direct Actions were brought by three

11   categories of plaintiffs.  We will call them the “Statutory

12   Direct Action Plaintiffs,” “Hawaii Direct Action Plaintiffs,” and

13   “Common Law Direct Action Plaintiffs.”  They asserted two

14   categories of claims.  First, the Statutory Direct Action

15   Plaintiffs and Hawaii Direct Action Plaintiffs alleged, among

16   other things, that Travelers “conspired to violate state laws

17   prohibiting unfair insurance . . . practices” by fraudulently

18   perpetuating a “state of the art” defense, id. at *18-19 ¶¶ 74-

19   79, and allegedly misrepresenting Manville’s knowledge of

20   asbestos hazards.  Second, the Common Law Direct Action

21   Plaintiffs claimed similarly that Travelers violated common law

22   duties when it failed to disclose what it knew about asbestos

1    hazards from its relationship with Manville.  Id. at *19 ¶¶

2    80-82.³

3        Relying on the 1986 Orders, in June 2002, Travelers moved

4    before the bankruptcy court to enjoin the Direct Actions.

5    Manville II, 340 B.R. at 55.  The bankruptcy court issued a

6    temporary restraining order against prosecution of certain

7    lawsuits against Travelers but also referred the matter to

8    mediation.  Id.  The mediation, conducted by former New York

9    Governor Mario M. Cuomo, resulted in the three Settlement

10   Agreements between Travelers and the Statutory, Hawaii, and

11   Common Law Direct Action Plaintiffs.  In re Johns-Manville Corp.

12   (Manville III), 517 F.3d 52, 58 (2d Cir. 2008); Manville I, 2004

13   WL 1876046, at *1, *22-23 ¶¶ 96, 101, 105.  In all, Travelers

14   agreed to pay up to $360 million to the Statutory Plaintiffs, up

15   to $15 million to the Hawaii Plaintiffs, and up to $70 million to

16   the Common Law Plaintiffs, in three respective funds separate

17   from the Manville Trust.  Manville I, 2004 WL 1876046, at *22-23

18   ¶¶ 96, 101, 105.

19       Under the Agreements, the Direct Action Plaintiffs were to

20   be paid from the funds, but only after three conditions were

21   satisfied.  Id. at *22 ¶¶ 96-100.  These conditions, described in

22   detail immediately infra, concerned the breadth of an order to be

---

³ As noted by the Supreme Court in Travelers Indem. Co. v. Bailey, 557
U.S. 137, 143 n.2 (2009), these suits were not direct actions "in the terms of
strict usage," because they sought "to hold Travelers liable for independent
wrongdoing rather than for a legal wrong by Manville."  Nevertheless, because
all courts in the course of this litigation have dubbed these suits "direct
actions," we do so here.  See In re Johns-Manville Corp. (Manville IV), 600
F.3d 135, 142 (2d Cir. 2010).

1    entered by the bankruptcy court ("Clarifying Order") regarding

2    the interpretation of the 1986 Orders, the finality of the

3    Clarifying Order, and various provisions regarding disposal of

4    the Direct Actions.

5        First, the Agreements required that the bankruptcy court,

6    once it approved the settlements, enter a "Clarifying Order."

7    The Statutory and Hawaii Direct Action Settlement Agreements

8    required that the Clarifying Order "contain[] prohibitions

9    against Claims at least as broad as those contained in Exhibit

10   A." App. at 231, 269.  Similarly, the Common Law Direct Action

11   Agreement required that the Clarifying Order contain language

12   "substantially in the form" of Exhibit A.[4]  Id. at 307.

13       Exhibit A of each Agreement was a proposed Clarifying Order

14   containing provisions barring all claims against Travelers

15   arising out of, or relating to, Travelers' handling of asbestos-

16   related claims, including contribution and indemnity claims.  The

17   proposed Clarifying Order also expressly barred the new,

18   nonderivative Direct Actions that were the subject of the

19   settlements.  Finally, each Exhibit A conveyed that the proposed

20   Clarifying "Order is an order clarifying the Confirmation Order

21   [of the 1986 Orders]" and that all the barred claims listed

---

[4] Although the language of the Common Law Direct Action Settlement Agreement differs somewhat from that of the Statutory and Hawaii Direct Action Settlement Agreements, we find, as did both the district court and the bankruptcy court, that the distinctions are not meaningful with regard to the issues on appeal.  See In re Johns-Manville Corp. (Manville VI), 845 F. Supp. 2d 584, 588 & nn.4&6 (S.D.N.Y. 2012); In re Johns-Manville Corp. (Manville V), 440 B.R. 604, 612 n.12 (Bankr. S.D.N.Y. 2010).  We therefore reject the Common Law Settlement Counsel's arguments that rely on supposed differences in the Agreements' language.

1    within the proposed Clarifying Order were "covered by the

2    Confirmation Order and permanently enjoined as against Travelers,

3    which [was] released therefrom under the Confirmation Order."

4    Id. at 245, 283.

5        Second, the Clarifying Order had to become a "Final Order"

6    under the Agreements' definition, i.e., an order from which no

7    appeal is taken, or an order that has been "affirmed by the

8    highest court to which such order was appealed or certiorari has

9    been denied and the time to take any further appeal or petition

10   for certiorari shall have expired." Id. at 228, 265, 304.

11       Third, another set of conditions precedent required either

12   the execution and delivery into escrow of at least 49,000 general

13   releases of claims (under the Statutory Direct Action Settlement

14   Agreement), at least 14,000 general releases of claims against

15   Travelers (under the Common Law Direct Action Settlement

16   Agreement), or dismissals with prejudice of all named plaintiffs'

17   pending claims against Travelers (under the Hawaii Direct Action

18   Settlement Agreement).

19       With the Agreements in place, the parties moved for the

20   bankruptcy court's approval in 2004. Manville I, 2004 WL

21   1876046, at *1. Various third parties filed objections,

22   including Chubb Indemnity Insurance Company ("Chubb"). Chubb had

23   issued asbestos-related insurance policies -- although it never

24   insured Manville -- and complained that any potential

25   contribution and indemnification claims it might have against

26   Travelers would be unlawfully barred if the Clarifying Order were

1    entered by the bankruptcy court.  Manville II, 340 B.R. at 54,

2    56; see also Manville IV, 600 F.3d at 143-44.  Chubb and the

3    other objectors argued that the bankruptcy court lacked subject

4    matter jurisdiction to enjoin third parties' Direct Actions and

5    related claims against nondebtors.  Additionally, Chubb objected

6    on due process grounds, arguing that it could not be bound by the

7    Clarifying Order because it had never received constitutionally

8    sufficient notice of the 1986 Orders.  Manville IV, 600 F.3d at

9    143, 147.

10    On August 17, 2004, the bankruptcy court rejected the

11    objections and approved all three Agreements.  It also entered

12    the Clarifying Order (the "2004 Orders").  The language of the

13    Clarifying Order was substantially the same as the language

14    contained in each Agreement's appended Exhibit A.  The bankruptcy

15    court concluded that it had authority to enter both the

16    Clarifying Order and the 1986 Orders, and that the Direct Actions

17    -- and related contribution and indemnity claims -- were barred

18    by the 1986 Orders.[5]  Manville I, 2004 WL 1876046, at *26-28 ¶¶

19    1-9, *30-34 ¶¶ 17-35.

20    Chubb and the other objectors appealed.  The district court

21    affirmed the bankruptcy court's order in all material respects.

---

[5] Specifically, the bankruptcy court determined that potential claims by
insurers such as Chubb were properly barred by the 1986 Orders.  In re
Johns-Manville Corp. (Manville I), Nos. 82 B 11656, 82 B 11657, 82 B 11660, 82
B 11661, 82 B 11665, 82 B 11673, 82 B 11675, 82 B 11676(BRL), 2004 WL 1876046,
at *34 ¶ 38 (Bankr. S.D.N.Y. Aug. 17, 2004); see also id. at *33-34 ¶¶ 34-35.
Additionally, the bankruptcy court reasoned that a "judgment reduction
provision" "protect[ed] the interests of non-settling defendants in the direct
action claims so completely as to render their objections to the settlements
moot."  Id. at *34 ¶ 38.

1   It concluded that the bankruptcy court had authority to enter the
2   Clarifying Order because it had jurisdiction to enter the 1986
3   Orders and that the Clarifying Order interpreted and enforced
4   those orders. Manville II, 340 B.R. at 59-67. The district
5   court also reasoned that Chubb, a sophisticated insurer, received
6   sufficient notice regarding its purported claims. Id. at 68. It
7   determined further that, even if notice in the usual sense was
8   lacking, Chubb's claims could be foreclosed upon because of the
9   special nature of the remedial scheme at issue: reorganization
10  of the bankruptcy estate. Id. at 68-69.

11      The objectors appealed again, and this court vacated and
12  remanded, concluding that entry of the 1986 Orders (as
13  interpreted by the Clarifying Order) exceeded the proper bounds
14  of the bankruptcy court's jurisdiction insofar as they enjoined
15  state-law claims, nonderivative of the debtor's wrongdoing, that
16  did not seek recompense from the Manville corpus. Manville III,
17  517 F.3d at 61-68. Having vacated on these grounds, this court
18  deemed it unnecessary to reach Chubb's due process argument. Id.
19  at 60 n.17.

20      The Supreme Court granted certiorari and then reversed.
21  Bailey, 557 U.S. at 137, 147. The Court held that the Direct
22  Actions were -- and always had been -- barred by the 1986 Orders,
23  and it concluded that this court had erred in reevaluating the
24  bankruptcy court's jurisdiction to enter those orders: "the 1986
25  Orders became final on direct review over two decades ago";
26  "whether the Bankruptcy Court had jurisdiction and authority to

11

1  enter the injunction in 1986 was not properly before th[e Court]

2  in 2008 . . . ." Id. at 148.

3       The Court concluded that the Clarifying Order's entry was a

4  proper exercise of the bankruptcy court's jurisdiction because it

5  "plainly had jurisdiction to interpret and enforce its own prior

6  orders." Id. at 151.  The Clarifying Order, therefore, did not

7  expand the scope of the 1986 Orders.  The Court did not

8  determine, however, whether any parties in particular were bound

9  by the 1986 Orders, nor did it assess the propriety, as a general

10  matter, of a bankruptcy court enjoining third-party claims

11  against nondebtors that were not derivative of the debtor's

12  wrongdoing.  See id. at 155.  The Supreme Court remanded for this

13  court to consider whether Chubb was bound by the 1986 Orders and

14  the Clarifying Order.  Id. at 155-56.

15       On remand, this court concluded that Chubb was not bound by

16  the 1986 Orders -- nor, by extension, the Clarifying Order --

17  because it had not been afforded constitutionally sufficient

18  notice of the 1986 Orders and their attendant proceedings.

19  Manville IV, 600 F.3d at 138, 148-49, 158.  Underpinning this

20  holding was the determination that the bankruptcy court

21  interpreted the 1986 Orders to have in personam, not just in rem,

22  effect.  Id. at 153-54.  This court expressly refused to

23  determine the effect of this holding on the Agreements, however,

1    leaving remaining issues to be resolved by "the parties, with the

2    aid of the bankruptcy court." Id. at 159.[6]

3         In September 2010, counsel for the Direct Action Plaintiffs,

4    claiming that all the conditions precedent had been satisfied,

5    moved before the bankruptcy court to compel Travelers to make the

6    payments required by the Agreements.  Travelers objected,

7    contending only that the breadth and finality conditions

8    precedent to payment under the Agreements were unsatisfied

9    because Chubb was now free to bring claims against it.  In re

10   Johns-Manville Corp. (Manville V), 440 B.R. 604, 613-15 (Bankr.

11   S.D.N.Y. 2010).

12        The bankruptcy court granted the Direct Action Settlement

13   Counsel's motions to compel.  See id. at 615.  The court

14   concluded that the disputed conditions precedent had been

15   satisfied.  It reasoned that:  (i) a Clarifying Order of the

16   required breadth had been entered in 2004, see id. at 613-14;

17   (ii) the Order became a "Final Order" when "it was affirmed by

18   the Supreme Court, the court of last resort, in Bailey on June

19   18, 2009," id. at 614; and, (iii) even after Manville IV's

20   holding that Chubb was not bound by the injunctions due to its

21   lack of notice, the Order enjoined the bargained-for breadth of

22   claims, id.  It explicitly noted for the record that satisfaction

23   of the release/dismissal conditions precedent was not disputed by

_____

[6] Travelers filed petitions for writs of certiorari and mandamus with
the Supreme Court, and the petitions were denied on November 29, 2010.  See
Travelers Indem. Co. v. Chubb Indem. Ins. Co., 131 S. Ct. 644 (2010).

13

1  Travelers.  Id. at 608.  The bankruptcy court directed Travelers

2  to fulfill its payment obligations immediately.  Id. at 615.

3       Proceedings regarding the propriety and amount, if any, of

4  prejudgment interest then began.  Travelers sought to broaden the

5  issues by claiming, for the first time, that the Agreements'

6  conditions precedent regarding disposal of the Direct Actions had

7  not been met.  The bankruptcy court rejected this attempt on the

8  ground that Travelers had not asserted this issue in response to

9  the motion to compel.  A final judgment was subsequently issued

10  against Travelers requiring it to pay over more than $500 million

11  (more than $65 million of which was prejudgment interest).

12      The district court reversed on February 29, 2012, holding

13  that the disputed conditions precedent had not been satisfied

14  because (i) the breadth of the language represented in each

15  Agreement's Exhibit A had been narrowed by this court's Manville

16  IV decision; and (ii) the Clarifying Order never became a "Final

17  Order" as defined in the Agreements.  In re Johns-Manville Corp.

18  (Manville VI), 845 F. Supp. 2d 584, 592-96 (S.D.N.Y. 2012).  The

19  district court therefore did not determine whether other

20  conditions precedent under the Agreements had been satisfied, nor

21  did it rule on matters pertaining to the bankruptcy court's award

22  of prejudgment interest.  This appeal followed.

23                          DISCUSSION

24      We review a bankruptcy court's decision that has

25  subsequently been appealed to the district court "independently."

26  In re Baker, 604 F.3d 727, 729 (2d Cir. 2010).  In doing so, we

14

1  accept the bankruptcy court's "factual findings unless clearly

2  erroneous but review[] its conclusions of law de novo."  Id.

3  a)  Contested Conditions Precedent

4      The interpretation of unambiguous settlement-agreement terms

5  is a question of law subject to de novo review.  See Tourangeau

6  v. Uniroyal, Inc., 101 F.3d 300, 307 (2d Cir. 1996).  The

7  Agreements here are "governed by and construed in accordance with

8  the laws of the State of New York."  App. at 239, 276, 312.

9  Under New York law, "a written agreement that is complete, clear

10 and unambiguous on its face must be enforced according to the

11 plain meaning of its terms."  Greenfield v. Philles Records,

12 Inc., 98 N.Y.2d 562, 569 (2002).  New York law also requires

13 strict compliance with settlement agreements, which are binding

14 and enforceable contracts between parties.  IDT Corp. v. Tyco

15 Grp., S.A.R.L., 13 N.Y.3d 209, 213-14 (2009).  Further,

16 "[e]xpress conditions must be literally performed; substantial

17 performance will not suffice."  MHR Capital Partners LP v.

18 Presstek, Inc., 12 N.Y.3d 640, 645 (2009).

19     1) Breadth and Finality of the Clarifying Order

20     The parties primarily contest whether:  (i) the breadth of

21 the bankruptcy court's Clarifying Order met the breadth

22 requirement in Exhibit A of the Agreements; and (ii) the

23 Clarifying Order became "final" within the definition of the

24 Agreements.  These questions, of course, govern whether the

25 conditions precedent to Travelers' obligation to pay have been

26 satisfied.  We conclude that they have been satisfied.

15

1              A) Breadth

2              Under both the Statutory and Hawaii Direct Action

3    Settlement Agreements, the relevant condition precedent requires

4    entry of "a Clarifying Order containing prohibitions against

5    Claims at least as broad as those contained in Exhibit A . . . ."

6    App. at 231, 269.  Similarly, under the Common Law Direct Action

7    Agreement, the relevant condition precedent requires the "[e]ntry

8    of an order or orders of the Bankruptcy Court, issued pursuant to

9    the [1986 Orders] . . . substantially in the form attached hereto

10   as Exhibit A . . . ."  Id. at 307.

11       We begin by observing that the injunctive language found in

12   each Agreement's appended Exhibit A was included, nearly

13   verbatim, in the Clarifying Order.  Travelers concedes as much.

14   But Travelers argues, and the district court agreed, that this

15   court's holding in Manville IV diminished the reach of the

16   Clarifying Order because the order became "jurisdictionally void"

17   as to Chubb, 600 F.3d at 158, which failed to receive

18   constitutionally sufficient notice of the 1986 Orders.  Travelers

19   asserts that, consequently, the Clarifying Order does not

20   "contain[] prohibitions against Claims at least as broad as those

21   in Exhibit A," because Chubb could potentially bring a claim

22   against Travelers.  Brief for Appellees at 40-41 (internal

23   quotation marks omitted).  We disagree.

24       The Clarifying Order's injunctive language was affirmed in

25   Bailey and has not been altered since.  In Bailey, the Supreme

26   Court determined that the bankruptcy court had, in substance,

16

1   properly interpreted the 1986 Orders in the Clarifying Order with

2   respect to the new, nonderivative Direct Actions:  "The

3   Bankruptcy Court correctly understood that the Direct Actions

4   fall within the scope of the 1986 Orders . . . ."  557 U.S. at

5   148.  The injunction that <u>Bailey</u> approved, therefore, bars not

6   only those traditional direct-action claims that sought redress

7   from Travelers based on Manville's own wrongdoing, but also those

8   nonderivative claims against nondebtor Travelers that were the

9   subject of the 2002-2004 settlement negotiations.  The Clarifying

10  Order, as a restatement of the 1986 Orders' injunction, precludes

11  claimants who have brought any Direct Actions -- or related

12  indemnity or contribution claims -- from further prosecution of

13  those claims against Travelers.  <u>Id.</u> at 149-50; <u>Manville VI</u>, 845

14  F. Supp. 2d at 595.

15      Travelers had maintained that the 1986 Orders enjoined the

16  Direct Actions throughout the 2002-2004 settlement negotiations,

17  <u>Manville I</u>, 2004 WL 1876046, at *21 ¶ 93, but its position was

18  not vindicated until <u>Bailey</u> was issued.  <u>Bailey</u> thus affirmed the

19  scope of the injunctive language contained within the Agreements'

20  Exhibit As, and the Clarifying Order bars all such claims -- all

21  it was meant to do.

22      The fact that Chubb may collaterally attack the

23  applicability of the Clarifying Order to actions it might bring

24  -- because it never received constitutionally sufficient notice

25  -- does not alter our conclusion.  The error in Travelers'

26  reading of the Clarifying Order stems from the conflation of two

1   separate issues:  (i) a party's ability to collaterally attack an

2   order for lack of constitutional notice; and (ii) the integrity

3   of that order and the breadth of claims it bars.

4       Travelers' reading asks us to adopt an interpretation of the

5   Clarifying Order that could not reasonably have been intended by

6   the parties, whatever Travelers' private hopes and dreams, and is

7   not supported by the language of the Agreements.  The

8   interpretation proposed by Travelers would have required the

9   bankruptcy court either to:  (i) certify that all potential

10  claimants -- all entities and individuals on the planet, from now

11  until the end of time -- have received constitutionally

12  sufficient notice of the 1986 Orders and their relevant

13  proceedings; or (ii) bar all claimants whether or not they had

14  constitutionally sufficient notice.  But neither action could

15  have been intended by sophisticated parties because each would

16  have been well beyond the bankruptcy court's power.  Undoubtedly,

17  that is the reason why no such requirement is found in the

18  Agreements' terms or their Exhibit As, whatever Travelers'

19  "secret or subjective intent."  Klos v. Lotnicze, 133 F.3d 164,

20  168 (2d Cir. 1997).

21      The district court disagreed that Travelers' position

22  required the bankruptcy court "'to enter an order clarifying that

23  all Direct Action claims were enjoined . . . regardless of

24  whether the parties . . . received constitutionally sufficient

25  notice of the 1986 Orders.'"  Manville VI, 845 F. Supp. 2d at 593

26  (quoting Manville V, 440 B.R. at 613).  It correctly noted that

18

1    Travelers is not seeking to enforce an injunction against

2    claimants in an unconstitutional manner but is asking only for a

3    recognition that the disputed condition precedent was never

4    fulfilled.  However, this argument, like the argument rejected

5    above, proceeds on the erroneous premise that the Agreements

6    called for a Clarifying Order that bound entities without

7    constitutionally sufficient notice.  As such, the Agreements, or

8    the ensuing Clarifying Order, would have been a nullity, and

9    common canons of contract construction call upon us to reject

10   such an interpretation, see Restatement (Second) of Contracts §

11   203 (1981), which is not a difficult task where, as here, such an

12   interpretation finds no support in the language.

13       Moreover, Travelers' interpretation amounts to a contractual

14   term that is incapable of ever being fulfilled, because some

15   claimant somewhere on the planet could always appear to attack

16   the order collaterally.  See id. § 76 cmt. b.  Such an impossible

17   condition -- with no support in contractual language and clearly

18   not intended by the parties -- would have rendered the contract a

19   nullity from its inception.  See id.

20       Travelers' interpretation must be rejected for the

21   additional reason that the parties bargained only for a

22   clarification, not an expansion, of the 1986 Orders, and the

23   jurisdictional reach of those Orders was already at issue at the

24   time of negotiations.  Leaving aside the separate issue,

25   discussed supra, of whether the bankruptcy court could have

26   extended the Orders' scope, the portions of the Agreements at

19

1    issue here evidence no intent by the parties that the Clarifying

2    Order would do so.  Manville IV, therefore, was rooted in an

3    interpretation of the breadth of the 1986 and Clarifying Orders,

4    but that breadth had already been determined to be coextensive

5    with respect to the issues here and could not have been affected

6    by our decision in that case.

7         Rooted in the 1986 Orders, the Clarifying Order could bar

8    claims only by those parties that received constitutionally

9    sufficient notice of the 1986 Orders and relevant proceedings.

10   As a party to the proceedings leading up to the 1986 Orders,

11   Travelers knew the scope of notice attendant to those

12   proceedings.  For example, Travelers knew that an FCR was

13   appointed by the bankruptcy court to represent the interests of

14   future asbestos claimants, but that no equivalent FCR had been

15   appointed regarding the interests of future indemnity and

16   contribution claimants.

17        To be sure, had Travelers believed that the bankruptcy court

18   exercised in rem as opposed to in personam jurisdiction in

19   entering the 1986 Orders, it might also have believed that the

20   Clarifying Order's injunction barred Chubb's attack.  See, e.g.,

21   Manville II, 340 B.R. at 68-69.  Of course, the in personam

22   nature of the jurisdiction exercised by the bankruptcy court in

23   releasing nondebtors from third-party claims demands that any

24   party barred by the 1986 Orders (and by extension, the Clarifying

25   Order) must have received constitutionally sufficient notice

26   accordant with that jurisdiction.

1       But Travelers recognized the possibility of this:  "In its

2   October 26, 2009 post-argument submission, Travelers argued that

3   the bankruptcy court's notice procedures relating to the 1986

4   Orders were 'wholly consistent' with the exercise of 'both <u>in rem</u>

5   jurisdiction and <u>in personam</u> jurisdiction over all Chubb

6   entities.'"  <u>Manville IV</u>, 600 F.3d at 154 n.14.  Travelers also

7   conceded that the claims underlying the Direct Actions, which

8   were the subject of the 2002-2004 negotiations, were

9   "unimaginable" during the proceedings that led to the 1986

10   Orders.  Travelers' Reply Brief at 5, <u>Manville V</u> (No. 82-11656-

11   brl); App. at 642.

12       Nonetheless, the pertinent portions of the Agreements did

13   not provide for an injunction any greater than that contained

14   within the 1986 Orders, nor did they address issues of notice or

15   due process.  A court "will not imply a term where the

16   circumstances surrounding the formation of the contract indicate

17   that the parties, when the contract was made, must have foreseen

18   the contingency at issue and the agreement can be enforced

19   according to its terms."  <u>Reiss v. Fin. Performance Corp.</u>, 97

20   N.Y.2d 195, 199 (2001).  We decline Travelers' invitation to look

21   beyond the Agreements' obvious meaning and to consider Travelers'

22   subjective hopes.

23       We therefore hold the Clarifying Order contains an

24   injunction as broad as, or substantially in the form of, that

25   contained in the Agreements' Exhibit As.

26

1           B) Finality

2       We next consider whether the Clarifying Order became final

3   and unappealable after the Supreme Court's ruling in <u>Bailey</u>.

4   Travelers argues here, and the district court concluded, that

5   when <u>Manville IV</u> "reversed" the district court's decision "as to

6   Chubb," 845 F. Supp. 2d at 594, it rendered the Clarifying Order

7   not final.  We conclude, as the bankruptcy court did, that the

8   Clarifying Order became final under the Agreements' definition

9   once <u>Bailey</u> was decided by the Supreme Court.

10      As noted, under the Agreements, a "Final Order" is an order

11  from which no appeal is taken or one that has been "affirmed by

12  the highest court to which such order was appealed or certiorari

13  has been denied and the time to take any further appeal or

14  petition for certiorari shall have expired."  App. at 227-28,

15  265, 304.

16      In reviewing the 2004 Orders, <u>Bailey</u> rejected the

17  jurisdictional challenges brought by Chubb and the other

18  objectors.  It determined that the 1986 Orders, having been final

19  for decades, were no longer subject to challenges to the

20  bankruptcy court's power to enjoin third-parties from bringing

21  claims that did not affect the <u>res</u> of the bankruptcy estate

22  against nondebtors.  <u>Bailey</u>, 557 U.S. at 152 ("[O]nce the 1986

23  Orders became final on direct review (whether or not proper

24  exercises of bankruptcy court jurisdiction and power), they

25  became <u>res judicata</u> to the parties and those in privity with them

26  . . . ." (internal quotation marks omitted)).  The Court also

22

1    held, just as this court had in Manville III, that the bankruptcy

2    court "plainly had [subject matter] jurisdiction to interpret and

3    enforce its own prior orders." Id. at 151.

4         Therefore, the pertinent portion of the injunction contained

5    within the Clarifying Order, as an extension of the 1986 Orders,

6    was similarly not subject to challenges regarding the bankruptcy

7    court's subject matter jurisdiction. Once Bailey determined that

8    the bankruptcy court had jurisdiction to interpret the scope of

9    the 1986 Orders, the Clarifying Order became a "Final Order"

10   under the Agreements' definition.

11        Travelers argues that: (i) Bailey's remand to this court,

12   and (ii) this court's subsequent reversal of the district court

13   in Manville IV, indicate that the Clarifying Order never became

14   final. Neither argument is persuasive.

15        First, the Supreme Court in Bailey reversed Manville III's

16   vacatur of the 2004 Orders (for the bankruptcy court's purported

17   lack of jurisdiction). This effectively reinstated the 2004

18   Orders, including the Clarifying Order. The Supreme Court's

19   remand with respect to Chubb's due process argument had no

20   bearing on the Clarifying Order's finality. The case was

21   remanded for a determination of whether Chubb failed to receive

22   constitutionally sufficient notice of the 1986 Orders and whether

23   Chubb was thus bound by them and the Clarifying Order. 557 U.S.

24   at 155. That issue was then decided by this court in Manville

25   IV.

1      Second, while <u>Manville IV</u> reversed as to Chubb, it did not

2 alter any aspect of the Clarifying Order, the meaning of which is

3 discussed in detail above.  The fact that Chubb is not bound by

4 the 1986 Orders does not, therefore, render the 1986 Orders any

5 less "final."  In sum, neither <u>Bailey</u> nor this court's holding in

6 <u>Manville IV</u> deprived the Clarifying Order of finality.

7      As the Supreme Court recognized, "the 1986 Orders became

8 final on direct review over two decades ago."  557 U.S. at 148.

9 It would defy logic to hold that the Clarifying Order, as an

10 extension of the 1986 Orders, is not "final" simply because Chubb

11 did not receive constitutionally adequate notice of the 1986

12 proceedings.  If the 1986 Orders are final despite the

13 inapplicability of the orders to Chubb, it follows that the

14 Clarifying Order is just as final.

15      Therefore, the Clarifying Order became final, as that term

16 is defined in the Agreements, once <u>Bailey</u> was issued.

17      2) Conditions Precedent Regarding Releases/Dismissals

18      We next consider the Agreements' conditions precedent that

19 require either the escrowing of a certain number of releases or

20 the dismissal of claims with prejudice.  We hold that Travelers'

21 arguments in that regard are waived.

22      For Travelers' payment obligation to mature under the Hawaii

23 Direct Action Settlement, plaintiffs must dismiss with prejudice

24 all claims against Travelers.  Under the Common Law Direct Action

25 Settlement Agreement, at least 14,000 general releases must be

1   executed and delivered into escrow before Travelers is required

2   to pay into the settlement fund.

3        Travelers argues that these conditions precedent have not

4   been satisfied.  Appellants assert that Travelers has waived

5   these arguments by failing to raise them properly before the

6   bankruptcy court in its papers in opposition to appellants'

7   motions to compel.

8        The motions to compel by their very nature, and explicitly

9   to boot, put the various issues regarding satisfaction of the

10  conditions precedent in play.  Travelers' opposition to the

11  motions recognized this by claiming that the conditions precedent

12  regarding the breadth and finality of the Clarifying Order were

13  not satisfied.  As a result, the bankruptcy court understood, and

14  noted explicitly, that Travelers raised no objection regarding

15  the release/dismissal conditions precedent.  It stated:

16              Pursuant to the Settlements, Travelers'
17              payment obligations are contingent upon the
18              satisfaction of three conditions precedent.
19              These conditions, stated in general terms,
20              are as follows:  (a) entry of an order by
21              this Court that becomes a "Final Order"
22              clarifying that the Direct Actions were, and
23              had always been, barred by this Court's
24              injunction contained in the 1986
25              Orders . . .; (b) entry of an order, that
26              becomes a "Final Order" approving the
27              proposed Settlements; and (c) the execution
28              and delivery into escrow of a specified
29              number of General Releases . . . . None of
30              the Parties disputes that conditions (b) and
31              (c) have been satisfied.
32
33  Manville V, 440 B.R. at 608 (footnote omitted).

25

1     Once the bankruptcy court determined that the Clarifying

2  Order met the breadth and finality requirements, it ordered

3  briefing and held oral argument regarding the issue of whether

4  plaintiffs were entitled to interest on the settlement proceeds

5  based on Travelers' breach.  Id. at 615.  The arguments that

6  Travelers sought to raise were that the motions to compel lacked

7  adequate supporting evidence that the release/dismissal

8  conditions had been met.

9     The bankruptcy court did not rule on the merits of those

10 arguments.  At the oral argument, the bankruptcy court noted

11 Travelers' earlier concession that certain conditions precedent

12 had been satisfied:  "If I recall back in all of the Sturm [and]

13 Drang here, we had conditions which we'll label A, B and C.  And

14 I think Travelers certainly conceded that B and C were met and

15 claimed that A was not met.  I opined otherwise.  And that's

16 where we stand."  App. at 857.

17     On appeal to the district court, Travelers argued again that

18 the release/dismissal conditions had not been satisfied.  The

19 district court did not reach these arguments, having found that

20 the conditions precedent regarding scope and finality had not

21 been fulfilled.  See Manville VI, 845 F. Supp. 2d at 596.

22     These arguments were available to Travelers in the

23 bankruptcy court, and Travelers has not offered any reason for

24 its failure to raise these issues in a timely manner in that

25 court.  Although we have discretion to consider a waived argument

26 where necessary to avoid manifest injustice, "the circumstances

26

1   normally do not militate in favor of an exercise of discretion to

2   address . . . new arguments on appeal where those arguments were

3   available to the [parties] below and they proffer no reason for

4   their failure to raise the arguments below." In re Nortel

5   Networks Corp. Sec. Litig., 539 F.3d 129, 133 (2d Cir. 2008)

6   (internal quotation marks omitted).

7          In its brief on appeal, Travelers notes only that it raised

8   these issues in the district court and does not claim to have

9   raised them in its opposition in the bankruptcy court to the

10  motions to compel.  In opposing those motions, Travelers argued

11  to the bankruptcy court only that the condition precedent

12  regarding breadth and finality called for denial of the motions.

13  Clearly, a failure to satisfy other conditions precedent should

14  have been raised at that time.  Instead, Travelers, which has had

15  the benefit of competent, imaginative, and meticulous counsel,

16  waited until the bankruptcy court disposed of the arguments

17  before it on the motions to compel and turned to the prejudgment

18  interest question.  Under these circumstances, we see no reason

19  to exercise our discretion to entertain Travelers' untimely

20  arguments.  We, therefore, consider these arguments waived.

21  c) Calculation of Prejudgment Interest

22         Finally, we consider whether the bankruptcy court's award of

23  prejudgment interest was appropriate and, if so, whether the

24  court erred in determining the date from which the award was

25  calculated.

1    Travelers argues that the award is inappropriate because the

2    Agreements do not include an express provision regarding

3    prejudgment interest.  Under New York law, however, the

4    beneficiaries of the settlements are entitled to statutorily

5    prescribed interest:  "Interest shall be recovered upon a sum

6    awarded because of a breach of performance of a contract . . . ."

7    N.Y. C.P.L.R. 5001(a).  We therefore hold that the bankruptcy

8    court did not err in its decision to award such interest.

9    Travelers argues further that the bankruptcy court erred in

10   determining the date interest began to accrue.  A court's

11   decision to award prejudgment interest running from a date

12   certain is a question of fact, see Ginett v. Computer Task Grp.,

13   Inc., 962 F.2d 1085, 1101 (2d Cir. 1992), subject to reversal

14   only if clearly erroneous.  Interest accrues "from the earliest

15   ascertainable date the cause of action existed."  N.Y. C.P.L.R.

16   5001(b).  The bankruptcy court correctly found that Travelers'

17   payment obligations have been "due and owing since June 18,

18   2009," when the Supreme Court upheld the Clarifying Order in

19   Bailey.  Manville V, 440 B.R. at 615.

20   Travelers asserts that no "Final Order" as defined by the

21   Agreements could have existed until the proceedings were

22   concluded, which, according to Travelers, was November 29, 2010,

23   when the Supreme Court denied Travelers' petitions for certiorari

24   and mandamus with respect to Manville IV.  This argument assumes

25   incorrectly that Chubb's due process claim had any bearing on the

26   finality of the Clarifying Order.  As discussed above, however,

28

1   that is not the case.  The bankruptcy court did not err in its

2   assessment of prejudgment interest.

3                              CONCLUSION

4       We have considered appellees' remaining arguments and find

5   them to be without merit.  For the foregoing reasons, the order

6   of the district court is vacated, and we remand with instructions

7   to reinstate the order of the bankruptcy court.

8